**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>Defendant. | Adv. Pro. No. 08-01789 (SMB)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>Debtor. | |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>SAGE ASSOCIATES, *et al*.,<br><br>Defendants. | Adv. Pro. No. 10-04362 (SMB) |
| IRVING H. PICARD, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and Bernard L. Madoff,<br><br>Plaintiff,<br><br>v.<br><br>SAGE REALTY, *et al.*,<br><br>Defendants. | Adv. Pro. No. 10-04400 (SMB) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO WITHDRAW THE REFERENCE**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................1

BACKGROUND ....................2

ARGUMENT ....................4

I. CAUSE EXISTS TO WITHDRAW THE REFERENCE BECAUSE THE BANKRUPTCY COURT LACKS FINAL ADJUDICATIVE AUTHORITY OVER ALL CLAIMS ....................4

II. THE INDIVIDUAL DEFENDANTS HAVE NOT CONSENTED TO THE BANKRUPTCY COURT'S FINAL ADJUDICATIVE AUTHORITY OR WAIVED THEIR RIGHT TO A JURY TRIAL....................8

III. THE REMAINDER OF THE *ORION* FACTORS FAVORS WITHDRAWAL ....................11

CONCLUSION....................14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1800Postcards, Inc. v. Morel*,
153 F. Supp. 2d 359 (S.D.N.Y. 2001)....12

*Adelphia Recovery Tr. v. FLP Grp., Inc.*,
No. 11-CV-6847 (PAC), 2012 WL 264180 (S.D.N.Y. Jan. 30, 2012)....7

*In re Bernard L. Madoff Inv. Secs., LLC*,
654 F.3d 229 (2d Cir. 2011)....5

*Buchwald v. Renco Grp.*,
539 B.R. 31 (S.D.N.Y. 2015)....8

*In re Coudert Bros. LLP*,
Case No. 11-2785 (CM), 2011 WL 5593147 (S.D.N.Y. Sept. 23, 2011)....7

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
462 B.R. 457 (S.D.N.Y. 2011)....7, 8, 9, 11, 13

*Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*,
905 F. Supp. 2d 526 (S.D.N.Y. 2012)....13

*Exec. Bens. Ins. Agency v. Arkison*,
573 U.S. 25 (2014)....5

*In re FMI Forwarding Co.*,
No. 00 B 41815(CB), 2004 WL 1348956 (S.D.N.Y. June 16, 2004)....12, 13

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)....4, 6, 7

*Kirschner v. Agoglia*,
476 B.R. 75 (S.D.N.Y. 2012)....12

*In re Madison Bentley Assocs.*,
LLC, 474 B.R. 430 (2012)....9

*Messer v. Magee (In re FKF3, LLC)*,
Case No. 13 CV 3601, 2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016)....7, 9, 11, 13

*N.Y. Skyline, Inc. v. Empire State Building Tr. Co. (In re N.Y. Skyline, Inc.)*,
512 B.R. 159 (S.D.N.Y. 2014)....7

*In re Orion Pictures Corp.*,
4 F.3d 1095 (2d Cir. 1993)....6, 9, 11, 13

*Picard for Liquidation of BLMIS v. Saren-Lawrence*,
Nos. 17 Civ. 5162 (GBD), 17 Civ. 5163 (GBD), 2018 WL 2383141 (S.D.N.Y. May 15, 2018), *reconsideration denied*, 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018) ......8, 12

*Picard v. BAM L.P. (In re: Bernard L. Madoff)*,
597 B.R. 466 (Bankr. S.D.N.Y. 2019), *aff'd*, *Picard v. BAM L.P. (In re BLMIS)*, 612 B.R. 257 (S.D.N.Y. 2020) ......8, 12

*Picard v. Greiff*,
617 B.R. 198 (S.D.N.Y. 2020) ......8, 12

*Picard v. Ida Fishman Rev. Trust*,
773 F.3d 411 (2d Cir. 2014) ......3

*Picard v. Sage Associates, et al.*,
11-CV-07682-JSR ......3

*Picard v. Sage Realty, et al.*,
11-CV-07666-JSR ......1, 3, 14

*In re Southeastern Materials, Inc.*,
467 B.R. 337 (Bankr. M.D.N.C. 2012) ......8, 10

*Stern v. Marshall*,
564 U.S. 462 (2011) ......1, 4, 6, 7

*In re the VWE Group, Inc.*,
359 B.R. 441 (S.D.N.Y. 2007) ......9, 13

**Statutes**

28 U.S.C. § 157(b)(2) ......7

28 U.S.C. § 157(d) ......1, 6

28 U.S.C. § 157(e) ......9

**Other Authorities**

Fed. R. Bankr. P. 5011 ......1

Fed. R. Bankr. P. 7015 ......3

Fed. R. Civ. P. 15(a)(2) ......3

*Restatement (Third) of Property (Servitudes)* § 6.15 (2000) ......10

Defendants Sage Associates and Sage Realty (the "Entity Defendants") and defendants Malcolm H. Sage, Martin A. Sage, and Ann M. Sage Passer (the "Individual Defendants" and, collectively with the Entity Defendants, "Defendants")[1] in the above-referenced adversary proceedings (the "Adversary Proceedings") submit this memorandum of law in support of their motion to withdraw the reference of the Adversary Proceedings pursuant to 28 U.S.C. § 157(d) and Rule 5011 of the Federal Rules of Bankruptcy Procedure.

**PRELIMINARY STATEMENT**

The Adversary Proceedings were filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on November 30, 2010 by Irving Picard, the trustee (the "Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and the substantively consolidated chapter 7 estate of Bernard L. Madoff ("Madoff"). Section 157(d) of the Bankruptcy Code provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). Under *Stern v. Marshall*, 564 U.S. 462 (2011), and its progeny, the Bankruptcy Court cannot enter final judgment as to the Individual Defendants or conduct a jury trial in this case absent their consent.

Defendants are entitled to a jury trial on the Trustee's fraudulent transfer claim, they timely asserted a demand for a jury trial, and they have not consented to a jury trial in the Bankruptcy Court. The Trustee has contended that the Entity Defendants subjected themselves to the Bankruptcy Court's jurisdiction and waived their jury trial rights by filing customer claims against the BLMIS estate. However, the *Individual Defendants* neither filed such claims nor did

---

[1] Defendant Lillian M. Sage died during the pendency of these actions. Malcolm H. Sage, in his capacity as the personal representative of the estate of Lillian M. Sage, was substituted into both actions in place of Lillian M. Sage. *See* Stipulation and Order for Substitution of Defendant, *Picard v. Sage Associates, et al.*, Adv. Pro. No. 10-04362 (SMB) (Bankr. S.D.N.Y.), ECF No. 53; *Picard v. Sage Realty, et al.*, Adv. Pro. No. 10-04400, Adv. Pro. No. 10-04400 (SMB) (Bankr. S.D.N.Y.), ECF No. 53.

they waive their Seventh Amendment jury trial rights. Thus, the Bankruptcy Court lacks jurisdiction to enter final judgments against the Individual Defendants.

Discovery has been completed in the Bankruptcy Court and the Adversary Proceedings are trial ready. Because the Individual Defendants are entitled to jury trials, in the interest of judicial efficiency, the reference in both Adversary Proceedings should be withdrawn and both cases should be tried before a jury.

**BACKGROUND**

On November 30, 2010, the Trustee brought the Adversary Proceedings to avoid and recover fraudulent transfers allegedly received by Defendants from BLMIS under the Bankruptcy Code and New York Debtor and Creditor Law. The Trustee sought to avoid and recover from Defendants transfers allegedly made by BLMIS after December 11, 2006 (the "Two-Year Transfers") in the following amounts: (i) $13,510,000 to Sage Associates and (ii) $3,370,000 to Sage Realty. The Trustee also seeks prejudgment interest from all Defendants accruing from the date of commencement of the Adversary Proceedings in 2010.

The Two Year Transfers were made to the Entity Defendants. The Individual Defendants were each sued in their purported capacities as partners or joint venturers in and beneficiaries of the Entity Defendants. The Individual Defendants were also sued as subsequent transferees under section 550(a) of the Bankruptcy Code, applicable provisions of the Securities Investor Protection Act ("SIPA"), including section 78fff-2(c)(3), and New York Debtor and Creditor Law (the "Subsequent Transferee Counts"). Among the many disputed issues in the Adversary Proceedings is whether, if the Trustee prevails in avoiding the Two Year Transfers to the Entity Defendants, he can claw back the Two-Year Transfers from the Individual Defendants and, if so, whether the Individual Defendants are jointly and severally liable for those amounts.

Defendants moved to withdraw the reference of these Adversary Proceedings to the District Court on the grounds that Defendants' defenses required substantial consideration of non-bankruptcy federal law, including the Securities Investor Protection Act ("SIPA") and other federal securities laws and bankruptcy law, namely section 546(e) of the Bankruptcy Code, warranted mandatory withdrawal of the reference. *Picard v. Sage Associates, et al.*, 11-CV-07682-JSR [Dkt. No. 1]; *Picard v. Sage Realty, et al.*, 11-CV-07666-JSR [Dkt. No. 1]. The reference of the case was withdrawn by Judge Rakoff with approximately 80 others.

While the motion was pending in the District Court, on January 25, 2012, the Trustee amended the complaints to add additional claims. A copy of the Amended Complaints are annexed to the accompanying Declaration of Andrew B. Kratenstein, dated November 30, 2020 ("Kratenstein Declaration or Decl.") as Exhibits A-B.

On April 30, 2012, Judge Rakoff entered an order dismissing all of the Trustee's claims pursuant to section 546(e) except those under sections 548(a)(1)(A) and 550. [Dkt. No. 12]. This ruling was upheld by the Court of Appeals for the Second Circuit on December 8, 2014. *Picard v. Ida Fishman Rev. Trust*, 773 F.3d 411 (2d Cir. 2014). The Second Circuit held that each payment sought to be avoided by the Trustee from an innocent customer of BLMIS constituted a valid "settlement payment" or a payment made "in connection with a securities contract" under Section 546(e) of the Bankruptcy Code.

As a result of the Second Circuit decision and an Order of the Bankruptcy Court entered on July 16, 2015 (Kratenstein Decl. Ex. C), the claims reflected in the Amended Complaints have been substantially reduced, leaving only the claim to recover the Two-Year Transfers under section 548(a)(1)(A) of the Bankruptcy Code. The Subsequent Transferee Claims were "dismissed without prejudice to (i) the Trustee's right to seek to amend in accordance with Rule 15(a)(2) of the Federal Rules of Civil Procedure, made applicable hereto by Federal Rule of

Bankruptcy Procedure 7015, and/or (ii) the Trustee's rights under Section 550(f) of the Bankruptcy Code." (*Id.* ¶ 3.) However, there remains a dispute as to whether the Individual Defendants can be held jointly and severally liable for the Two-Year Transfers in their alleged capacities as partners of or joint venturers in the Entity Defendants.

On September 18, 2015, Defendants answered the Amended Complaints and demanded jury trials. (Kratenstein Decl. Exs. D-E.) Discovery ensued and has since closed. A final pretrial conference is scheduled to be held on November 18, 2020.

Defendants bring this motion to withdraw the reference because the Trustee's claims are actions at law as to which the Individual Defendants have a constitutional right to a jury trial, which right was timely asserted and has not been waived.

## ARGUMENT

### I. CAUSE EXISTS TO WITHDRAW THE REFERENCE BECAUSE THE BANKRUPTCY COURT LACKS FINAL ADJUDICATIVE AUTHORITY OVER ALL CLAIMS

The Seventh Amendment to the United States Constitution provides "in Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved " U.S. Const., Amend. VII. Fraudulent transfer actions are actions at law as to which a defendant is entitled to a jury trial under the Seventh Amendment. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). The Supreme Court in *Granfinanciera* held that a fraudulent conveyance claim under Title 11 is not a matter of "public right" for purposes of Article III, and that the defendant to such a claim is entitled to a jury trial under the Seventh Amendment.

More than two decades later, in *Stern*, the Supreme Court held that the bankruptcy court lacked constitutional authority to adjudicate a private right claim such as the claim in *Granfinanciera*. Following *Granfinanciera* and *Stern*, and in an effort to reconcile bankruptcy and district court statutory and constitutional jurisdiction in bankruptcy matters, the courts have

constructed a narrow exception to the bankruptcy court's limited jurisdiction in cases where defendants failed to assert a right to a jury trial, there are no disputed facts for a jury to determine, and the defendants do not consent to final adjudication by the bankruptcy court. In such circumstances, the bankruptcy court may issue findings of fact and conclusions of law in an adversary proceeding subject to de novo review by the district court. *See, e.g.*, *Exec. Bens. Ins. Agency v. Arkison*, 573 U.S. 25 (2014).

None of the factors that would permit a trial in the Bankruptcy Court is present in the Adversary Proceedings as to the Individual Defendants. The Individual Defendants have timely asserted, and not waived, their right to a jury trial. They do not consent to the entry of a final order by the Bankruptcy Court. Key issues of fact in the Adversary Proceedings remain in dispute, including: (1) the breadth, nature, and scope of Madoff's fraud, including when it began and whether it extended beyond his admittedly fraudulent "split-strike" trades; (2) the extent to which Defendants authorized or directed Madoff's non-split-strike trading in their accounts;[2] (3) whether any of the trades reflected on the account statements for the Entity Defendants were actually executed; and (4) whether the Entity Defendants were partnerships or another type of business association such as a tenancy in common. Under these circumstances, the appropriate procedure for the determination of the fraudulent conveyance issue is withdrawal of the reference for jury trial in the District Court.

[2] Like all other BLMIS customers, the Trustee calculated Defendants' net equity using the "Net Investment Method" that was upheld by the Second Circuit. *In re Bernard L. Madoff Inv. Secs., LLC*, 654 F.3d 229 (2d Cir. 2011) ("Net Equity Decision"). However, the Second Circuit premised its Net Equity Decision entirely on Madoff's split-strike fraud and explicitly excluded all non-split strike accounts. *Net Equity Decision*, 654 F.3d at 242 n.1 (2d Cir. 2011) ("The non-split strike customers are not parties to this appeal."). Defendants contend that the Trustee should have instead used the equity reflected on their last customer statements to calculate their net equity (the "Last Statement Method") because the Individual Defendants authorized and directed trading in their accounts. In adopting the Trustee's Net Investment Method for split-strike customers, the Second Circuit cautioned: "We would expect that resort to the Net Investment Method would be rare because this method wipes out all events of a customer's investment history except for cash deposits and withdrawals." *Id.* at 238. The Second Circuit further held: "Indeed, the Last Statement Method may be especially appropriate where – unlike with the BLMIS accounts at issue in this appeal – customers authorize or direct purchases of specific stocks." *Id.* (citing *Miller v. DeQuine (In re Stratton Oakmont, Inc.*), No. 01-CV-2812 RCC, 01-CV-2313 RCC, 2003 WL 22698876 (S.D.N.Y. Nov. 14, 2003)).

Prior to *Stern*, the Second Circuit in *In re Orion Pictures Corp.*, 4 F.3d 1095 (2d Cir. 1993) determined that withdrawal of the reference was necessary when a party demanded a jury trial in a non-core matter. Given that the bankruptcy court's determination in the non-core matter was subject to de novo review and in light of the Seventh Amendment clause that "no fact tried by a jury, shall be otherwise reexamined in any court of the United States, than according to the rules of common law", the Second Circuit held that "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *Orion Pictures*, 4 F.3d at 1101.

The Second Circuit also held that, in deciding whether to withdraw the reference "for cause" under 28 U.S.C. § 157(d), a court should consider: (1) whether the action is non-core; (2) efficient use of judicial resources; (3) delay and costs to the parties; (4) uniformity of bankruptcy administration; (5) the prevention of forum shopping; and (6) other related factors. *Orion Pictures*, 4 F.3d at 1101.

The Supreme Court's decision in *Stern* shifted the analysis of whether to withdraw the reference of a case for trial in the district court from the core/non-core consideration in *Orion* to whether the claim to be adjudicated involves a "public" or a "private" right. If the claim involves private rights, Congress cannot vest final adjudicative power over it in the bankruptcy court consistent with Article III, whether the claim is "core" or "non-core." The Supreme Court held that the bankruptcy court did not have the constitutional authority to issue a final judgment on the counterclaim because the debtor had "failed to demonstrate that her counterclaim falls within one of the 'limited circumstances' covered by the public rights exception," despite the fact that such a claim is characterized by the Bankruptcy Code as a "core" claim. *Stern*, 564 U.S. at 499. The Court, following *Granfinanciera*, compared fraudulent conveyance claims to the counterclaims and because both involved private rights of action and determined that "Congress

could not constitutionally assign resolution of the fraudulent conveyance action to a non-Article III court . . . ." *Id.* at 492 n.7.

It is clear under *Stern* that the Bankruptcy Court may not enter final judgment on the Trustee's remaining claims for recovery of fraudulent conveyance, even though these claims are characterized as "core" under 28 U.S.C. § 157(b)(2). *See, e.g.*, *N.Y. Skyline, Inc. v. Empire State Building Tr. Co. (In re N.Y. Skyline, Inc.)*, 512 B.R. 159, 177 (S.D.N.Y. 2014) ("Fraudulent conveyance actions 'arise under' section 548 of the Bankruptcy Code and are listed as core in section 157(b)(2), but following *Stern*, courts have held that bankruptcy judges may not enter final judgments in such cases absent the consent of the parties."); *Adelphia Recovery Tr. v. FLP Grp., Inc.*, No. 11-CV-6847 (PAC), 2012 WL 264180, at*4 (S.D.N.Y. Jan. 30, 2012) ("Supreme Court precedents demonstrate that a fraudulent transfer claim involves a private right."); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 469 (S.D.N.Y. 2011) ("*DSI*") (withdrawing the reference based on finding that "DSI's fraudulent conveyance counterclaim against Dechert is precisely the kind of claim found to involve only private rights in *Granfinanciera*"); *In re Coudert Bros. LLP*, Case No. 11-2785 (CM), 2011 WL 5593147, at *8 (S.D.N.Y. Sept. 23, 2011) (vacating final order of bankruptcy court entered prior to *Stern* with respect to fraudulent conveyance claim because "a claim of fraudulent conveyance implicates private rather than public rights").

Defendants have timely asserted their right to a jury trial. As discussed in the next section, the Individual Defendants have not waived their jury trial right or consented to the entry of a final order by the Bankruptcy Court. Under these circumstances, the appropriate procedure for the determination of the fraudulent conveyance issue is withdrawal of the reference for jury trial in the district court. *See Messer v. Magee (In re FKF3, LLC)*, Case No. 13 CV 3601, 2016 WL 4540842 (S.D.N.Y. Aug. 30, 2016) (withdrawing reference because the Bankruptcy Court

lacked constitutional authority to finally adjudicate the trustee's claims against the defendant and the Seventh Amendment required a jury trial on those claims); *Buchwald v. Renco Grp.*, 539 B.R. 31, 36 (S.D.N.Y. 2015) (withdrawing reference for jury trial on adversary proceeding asserting claims of fraudulent conveyance).

## II. THE INDIVIDUAL DEFENDANTS HAVE NOT CONSENTED TO THE BANKRUPTCY COURT'S FINAL ADJUDICATIVE AUTHORITY OR WAIVED THEIR RIGHT TO A JURY TRIAL

The Bankruptcy Court and this Court have held that the Bankruptcy Court has equitable jurisdiction over avoidance actions brought by the Trustee where defendants filed customer claims against the BLMIS estate. *See Picard v. BAM L.P. (In re: Bernard L. Madoff)*, 597 B.R. 466, 486 (Bankr. S.D.N.Y. 2019), *aff'd*, *Picard v. BAM L.P. (In re BLMIS)*, 612 B.R. 257, 267 (S.D.N.Y. 2020); *Picard v. Greiff*, 617 B.R. 198, 204 (S.D.N.Y. 2020); *Picard for Liquidation of BLMIS v. Saren-Lawrence*, Nos. 17 Civ. 5162 (GBD), 17 Civ. 5163 (GBD), 2018 WL 2383141, at *4 (S.D.N.Y. May 15, 2018), *reconsideration denied*, 2018 WL 4659476 (S.D.N.Y. Sept. 11, 2018).

In each of the foregoing cases, all defendants filed a customer claim against the BLMIS estate, which the defendants then sought to withdraw on the eve of trial. That is not the case here. Although the Entity Defendants filed customer claims against the Estate (Kratenstein Decl. Exs. A-B ¶¶ 51-54), the Individual Defendants did *not*. "Bankruptcy courts may not enter final orders in fraudulent conveyance actions, at least where the defendant has not filed a proof of claim." *In re Southeastern Materials, Inc.*, 467 B.R. 337, 363 (Bankr. M.D.N.C. 2012) (citing cases). Thus, the Individual Defendants never agreed to submit themselves to the bankruptcy court's final adjudicative authority or waived their right to a jury trial.

*DSI* is instructive. In that case, DSI (as plan administrator for the estate of Courdert Brothers LLP) brought thirteen separate adversary proceedings against ten law firms alleging

fraudulent transfers under the "unfinished business doctrine", which were premised on New York state partnership and contract law. 462 B.R. at 461. Only one of the law firms filed a proof of claim and a ruling on that claim would not have resolved all claims against the nine other law firms. *Id.* at 469.

The court also noted that one of the nine law firms (DLA Piper) "has demanded a jury trial of all issues so triable." *Id.* at 472. Thus, "its action must be finally adjudicated here" because, under 28 U.S.C. § 157(e), "where a jury right is asserted, consent to Bankruptcy Court final adjudication must be express." *Id. See also In re the VWE Group, Inc.*, 359 B.R. 441, 451 (S.D.N.Y. 2007) ("Under *Orion*, the court's finding that the claim is [not subject to final adjudication in Bankruptcy Court] coupled with defendants' jury demand is sufficient cause to withdraw the reference").

Here, all five Defendants demanded jury trials. (Kratenstein Decl. Exs. D-E.) Only two of the five Defendants (the Entity Defendants) filed customer claims against the BLMIS estate. Thus, only two of the five Defendants arguably submitted themselves to the Bankruptcy Court's final adjudicatory authority and waived their jury trial rights. The three Individual Defendants did not.

The Trustee seeks to claw back the Two-Year Transfers from the Individual Defendants on the grounds that they are partners or joint venturers in the Entity Defendants. (Kratenstein Decl. Exs. A-B ¶¶ 8-11.) Courts have also specifically held that, when a plaintiff seeks to claw back monies on alter ego theories of liability, the Bankruptcy Court lacks final adjudicative authority over such claims because the alter ego claims are not "*necessarily resolved* in the claims allowance process". *In re FKF3*, 2016 WL 4540842, at *7 (holding that "alter-ego" claim is not one "over which the Bankruptcy Court has final adjudicative authority"); *see also In re Madison Bentley Assocs.*, LLC, 474 B.R. 430 (2012) (holding that Bankruptcy Court "lacks final

adjudicatory authority over the alter ego claim" where the plaintiff's claim "was brought against a person who has not submitted a claim against the estate – but solely to augment that estate"); *Southeastern*, 467 B.R. at 360 (holding that it was not "necessary to determine" whether a business and its owner were "alter egos of one another in order to allow [the owner's] proof of claim" and thus the "Court has no constitutional authority to enter a final order with regard to" the alter ego claim).

Whether the Trustee can claw back the Two-Year Transfers from the Individual Defendants will not necessarily be resolved in the claims determination process. The issue to be decided as to the Entity Defendants is whether they received initial fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code. Resolution of that issue will not necessarily decide the Individual Defendants' vicarious liability, if any, for those transfers.

Defendants contend that the Trustee must proceed against the Individual Defendants as subsequent transferees, which claims were dismissed without prejudice by Judge Rakoff. (Kratenstein Decl. Ex. C ¶ 3.) But even if the Trustee could pursue claims against the Individual Defendants now, the issue to be decided would be whether the Two-Year Transfers can be clawed back from the Individual Defendants as partners or alter egos of the Entity Defendants and, if so, whether claw back is joint and several.

Defendants contend that the Entity Defendants operated as tenancies in common and thus the Individual Defendants are not subject to joint and several liability. *Restatement (Third) of Property (Servitudes)* § 6.15 (2000) ("The rule of joint and several liability does not apply to tort liability of members arising out of holding the common property as tenants in common. The liability of members is limited to their proportionate share determined by their share of liability for common expenses."). In addition, even if Sage Realty was and operated as a partnership, the Individual Defendants contend that any such partnership was dissolved by virtue of the

disassociation and then death of one of the investors in Sage Realty, Jack Adelman, who received $2,845,000 of the Two-Year Transfer to Sage Realty, then withdrew from Sage Realty, subsequently passed away, and neither he nor his estate were sued.

Determination of these vicarious liability issues turns on application of New York State law (not bankruptcy law) and will not necessarily be resolved in the claims determination process. Thus, the Bankruptcy Court lacks final adjudicative authority over them.

## III. THE REMAINDER OF THE *ORION* FACTORS FAVORS WITHDRAWAL

In evaluating whether cause for withdrawal exists, courts consider the following additional factors: (1) considerations of efficiency; (2) uniformity in the administration of bankruptcy law; (3) requests for a jury trial; and (4) the prevention of forum shopping. *Orion Pictures*, 4 F.3d at 1101. These factors favor withdrawal here.

*First*, it is in the interest of judicial economy to withdraw the reference. In *FKF 3*, Judge Karas withdrew the reference because "given the substantial overlap among the various claims and Defendants, it would be inefficient to try this case in separate courts" and "would risk inconsistent findings". 2016 WL 4540842, at *20. Likewise, in *DSI*, Judge McMahon held, "[t]o the extent that DLA Piper's case [which required a jury trial] raises issues identical to those that would be raised in other cases, it would be a waste of judicial resources to allow the actions to proceed separately." *DSI*, 462 B.R. at 472. As to the other defendants, Judge McMahon noted that, because the District Court would also have to review the Bankruptcy Court's "conclusions of law de novo were this case left in the Bankruptcy Court . . ., there is no reason not to do now what must be done eventually." *Id.* at 473.

It is also common to wait to withdraw the reference until a case is trial ready, as the Adversary Proceedings now are. *See, e.g.*, *FKF 3*, 2016 WL 4540842, at *20 (withdrawing reference in case notwithstanding trustee's assertion that the Bankruptcy Court was "fully

familiar with the case and prepared to move forward with trial expeditiously"); *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) ("[T]he Court may withdraw the reference if and when a trial is necessary."); *1800Postcards, Inc. v. Morel*, 153 F. Supp. 2d 359, 367 (S.D.N.Y. 2001) ("Both have requested a jury trial and neither has consented to final resolution of the non-core matter by the Bankruptcy Court. Withdrawal of the reference thus would solve the constitutional problems that would arise were the adversary action to proceed to trial."); *In re FMI Forwarding Co.*, No. 00 B 41815(CB), 2004 WL 1348956, at *6 (S.D.N.Y. June 16, 2004) ("[T]he fact that the bankruptcy court would be better able than this Court to oversee discovery and other pretrial activities . . . is no longer a relevant consideration at this stage of the present adversary proceeding where . . . there is very little discovery left, and this case is on the eve of trial.") (internal quotations and citations omitted).

*Second*, as to the "uniform administration of bankruptcy law", as discussed above, not all issues in the Adversary Proceedings are issues of bankruptcy law that are wrapped up in the claims determination process. Whether the Two-Year Transfers can be clawed back from the Individual Defendants as purported partners or alter egos of the Entity Defendants, and whether any such claw back would be on a joint and several basis, turns on issues of New York State law.

In addition, although judges in this District have recognized Judge Bernstein's long handling of the BLMIS bankruptcy as a factor in declining to withdraw the reference,[3] Judge Bernstein retired effective September 30, 2020. (Kratenstein Decl. Ex. F.) He is remaining on the bench until March 31, 2020, or until his replacement is named, whichever is earlier. (*Id.*) Thus, it appears unlikely that Judge Bernstein would preside over a trial in this case if it were to proceed in Bankruptcy Court.

[3] *Greiff*, 617 B.R. at 207-08; *BAM*, 612 B.R. at 266-67; *Saren-Lawrence*, 2018 WL 2383141, at *6.

*Third*, as discussed above, Defendants timely requested a jury trial in their Answers and at least the Individual Defendants are entitled to jury trials as to their liability. (Kratenstein Decl. Exs. D-E.) In *FKF 3*, Judge Karas held that an individual defendant was entitled to a jury trial on a trustee's alter ego claim. Because the trustee was seeking "to hold Magee and the other Principals individually, jointly and severally responsible for satisfying any and all debts of the Debtor . . . in an effort ultimately to obtain a money damages from the Principals, Magee has a right to a jury trial with respect to the claim[.]" *FKF 3*, 2016 WL 4540842, at *17 (internal quotations and citations omitted).

Other judges in this District regularly withdraw the reference when a defendant has a jury trial right. *See, e.g.*, *DSI*, 462 B.R. at 472 ("In addition, Defendant DLA Piper has demanded a jury trial of all issues so triable. Therefore, its action must be finally adjudicated here."); *VWE Group*, 359 B.R. at 451 ("[T]he [district] court's finding that the claim is non-core coupled with defendants' jury demand is sufficient cause to withdraw the reference."); *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.*, 905 F. Supp. 2d 526, 534 n.3 (S.D.N.Y. 2012) ("If a jury trial were required, this could counsel for withdrawal of the reference.").

*Fourth*, Defendants are not forum shopping, particularly given their jury trial demands. *VWE Group*, 359 B.R. at 451 (holding that withdrawal of the reference "will not result in forum-shopping because, due to defendants' demand for a jury trial on this non-core claim, the parties have no choice but to try the case in this Court."); *FMI Forwarding*, 2004 WL 1348956, at *7 ("Moreover, withdrawing the reference does not promote forum- shopping because, since Marcus has a right to a jury trial on the claim, absent consent by Marcus to a trial in bankruptcy court, the parties have no choice but to try the case in this Court.").

In sum, all of the *Orion* factors favor withdrawal.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court withdraw the reference of the Adversary Proceedings.

Dated: November 30, 2020
New York, New York

MCDERMOTT WILL & EMERY LLP

*/s/Andrew B. Kratenstein*
Andrew B. Kratenstein
340 Madison Avenue
New York, New York 10173-1922
Telephone: (212) 547-5400
Facsimile: (212) 547-5444

*Attorneys for Defendants Sage Associates, Sage Realty, Malcolm H. Sage, Martin A. Sage, and Ann M. Sage Passer*